May it please the Court, Counsel. In this case, this is a- Would you reintroduce yourself for the record, please? Okay. Charles Rabinowitz for the claimant. Very well. Dave Trachsel. The issue in this case is a very narrow one. It's whether a non-worked holiday counts as a day actually worked in calculating an average weekly wage under Section 10A of the Longshore and Harbor Workers Act. And there are three reasons why it should not count. Why shouldn't we just follow the Woolley case? That's the other side's argument. I think you should follow the Matula case. That's why I asked you the question. I know it's their argument. I want to ask you why we shouldn't. The reason you shouldn't is because the statute says that you count the days when so employed. And longshore workers are not employed if they don't work on a holiday. It's not like they work particularly in day track. They get paid, don't they? They get paid. That's correct. And they're not fired from their job, are they? They're not working that day. But they're not fired from their job that day. No, they're not. They're not working at all that day. One could interpret when so employed to include Saturdays and Sundays, couldn't one, under the same rationale? A lot of longshore workers work on Saturdays and Sundays. Well, but we're really talking the way the particular, if you will, method of calculating this, we go with five days per week and six days per week, and the calculation takes that into effect. So could we ‑‑ I mean, we're really looking at when so employed, and what is the definition of that, aren't we? That's correct. And what this Court said in Matulak is when so employed means actually working. And they gave examples of when a worker is not actually working, and one of those examples was holidays. And that's the first reason. I think it's the only ‑‑ this Court's already decided this issue in Matulak. And previous to that, it also decided it in the Duncanson‑Harrison case, which is the second reason that this Court should not follow the Woolley case. Matulak was a totally different issue, though, was it not? It was a different issue, but this issue got in there. The question was how to calculate an average weekly wage under Section 10A, and when does 10A apply. And then the Court said this is how you do it under 10A. You count the days when they're actually working. I understand your argument, but my understanding was, reading Matulak pretty carefully in order to be prepared, this was really only when 910A would be applied, not what days would constitute what days so employed. Well, they ‑‑ that was the issue. When do we apply 10A, and how do we apply it? And one of the things they said is that you count that it's not ‑‑ What's your best language in Matulak for what you suggest? My best language is ‑‑ because, of course, I'm a three‑judge panel here. I'm willing to agree with whatever Matulak says if you give me the direct language on point. We'll find it in a second. It is on page 9 of the opening brief that I filed. I quoted it. I'm not ‑‑ I quoted it. Oh, I see. It's in your brief. It's in the brief. That's correct. All right. Okay. And I quoted it, and it basically says ‑‑ All right. I've got it then. Okay. I know what language you're talking about. Well, they talk about 18 percent more days. Matulak worked 82 percent of the time, and they said it's not unfair to add another 18 percent more days, including vacation, holiday, and sick days than he actually worked in the measuring year. Okay. That's the language. All right. And Duncanson Harrelson had similar language to that, but they had other examples besides holiday. And then they used et cetera. Counsel, that presents the issue quite clearly. You might want to reserve the rest of your time and let's hear from the other side, unless you want to ‑‑ I just want to add one more point on this. It's also very logical. The longshore worker does not earn anything on the holiday. He earns the holiday by working the other days of the year and the previous year in the situation with the West Coast longshoreman. So that's a ‑‑ Let me ask you another question, which is of some interest to me. Didn't you argue in front of the prior board that paid holidays should be included in post-injury calculation to be consistent with the pre-injury calculation? Yeah, the earnings for the paid holiday are included. That's correct. In the post-injury calculation? That's correct. And you did that because it was consistent with the pre-injury calculation, correct? That's correct, and that's where the court ‑‑ And so if we change the pre-injury calculation, should we also change the post-injury calculation? No. Well, then it would be comparing apples and oranges, wouldn't it? Well, actually ‑‑ But really what we have here is we're trying to make sure that we use the same amount of days or the same, if you will, issue as today's in calculating both calculations. So if I start with pre-injury calculation, I don't include the holidays, and then I go to post-calculation and I put them in, which is what the board did, then at that point, haven't I done an inconsistent treatment there? Well, you know, you raise a good point. The judge, the administrative law judge, did exactly what you said. He calculated that since he had to calculate that Dave Traxler could have worked five days a week before, he also calculated he could have worked five days a week after and he included all of that in the thing. So he actually did exactly what you're suggesting. You're suggesting that that was consistent. Well, I'm not appealing it. You're not appealing it because it comes out to your betterment. If we change this particular calculation, it will add to your client's compensation. That's correct. But he did count the same number of days before and after. The fact is that he used a ‑‑ it came out to be a lower rate because the jobs that were identified paid a lower rate than Mr. Traxler could handle because of his injury. You urged that, too, didn't you? Excuse me? You urged that, didn't you, that he include ‑‑ I didn't urge it that way. I urged that he take his actual earnings and divide them by 52, including the holiday pay that he earned. But the judge went a little differently. He said I think he could have worked more than he actually was working afterwards. So he actually came up with a much higher residual wage earning capacity than I argued below. But you argued that holidays be included in post-injury, didn't you? I absolutely argued that. That's not even a contest. That's not even a contested issue. Paid holidays do count in the subsequent residual average weekly wage or compensation rate or earnings, I should say. Thank you, counsel. Thank you. We'll hear from Rogers Terminal. May it please the Court, Jay Beatty, appearing on behalf of Rogers Terminals. Including holidays in the average daily wage denominator makes sense. It avoids overpayment, and it is consistent with the plain language of Section 10A. In talking about the plain language of Section 10A, when the statute was amended in 1948 and Congress added the 260-day multiplier, Congress was well aware that five-day-a-week workers weren't working 260 days a year. Two hundred and sixty days is five days a week, 52 weeks a year. That's working every workday of the year. Even if an employee were able to avoid lockout strikes, illness, and other catastrophes at work, that employee worker would at least take some days off of work because of holidays. Nonetheless, holidays are included in the 260-day number. They're not included because they're days worked. They're included because they are days for which a worker can receive pay for employment. And with that in mind, the language so employed contained in Section 10A must be construed as meaning days paid, days on which a worker can be paid for employment. That is exactly the interpretation of the statute that was given to 10A by the Fifth Circuit and the Fourth Circuit, the Fifth Circuit in Wooley, the Fourth Circuit in Moore. Both of those courts concluded that days so employed meant days paid, including holidays. They were correct. That is a correct rule, and it makes sense under the Act. Now, we have a Ninth Circuit case called Matulik. What's your view on Matulik? How do we differentiate that? That's the good question. Matulik did not discuss at all the proper calculation of the average daily wage. It mentioned in passing that the average daily wage was based on days worked. But no party to that appeal, at least from what I can tell from reading the opinion, actually raised the issue. The Court simply made a passing comment. Matulik was a case about when Section 10A applied. It was not a case about the ministerial calculation of average daily wage. That issue was raised directly in both the Wooley case and the Moore case. And in those cases, the Court stated holidays are included in the average daily wage divisor because they are days on which a claimant is so employed. And that makes sense, because unlike certain types of pay under the ILWU contract, holidays are only payable if the employee is actually working or available for work on the day of the holiday. They are compensation for a specific day of employment. It's triggered by working a sufficient number of hours in the year before, but it's not a benefit that the employee receives unless the employee is actually employed and available for work in the week in which the holiday falls. It is clearly pay for employment, and holidays should be considered as part of the average daily wage divisor. Now, in Matulik, and I started out by saying that there were a number of reasons and it made sense to include holidays in the average daily wage divisor, and one of those reasons is to avoid overcompensation. Now, in Matulik, the Court recognized that overcompensation may occur because the 260-day multiplier in some cases, particularly where a worker works significantly less than 260 days, may result in overcompensation. That's a result that may occur. In Matulik and Duncan Harrelson, this Court recognized that that was a congressional choice. They acknowledged that you may have some overcompensation, but that overcompensation is traded for administrative ease. In other words, Congress gave up an absolute correct calculation of average weekly wage for a simple one. It adopted a simple formula. Certainly taking the average daily wage times 260 divided by 52 is a lot simpler than a 10C calculation. So it opted for situational overcompensation for a simple formula. It certainly didn't create a rule that endorsed overcompensation, and that's basically what claimant is asking for in this case. They're asking for you to create a circuit split to part with the Fifth Circuit and the Fourth Circuit to create a rule that has no purpose other than to overcompensate the claimant. There is no tradeoff there. Including holidays or excluding holidays from the average daily wage calculation doesn't foster administrative ease. It doesn't make it easier to calculate the average weekly wage. There is no tradeoff. The only result of this rule is overcompensation to the claimant. Well, Woolley didn't count vacation days that were sold back to the employer, correct? Right. Those are already accounted for in the calculation because they're actual work days. So what the Woolley court said is we're not going to take vacation pay that's paid on top of your actual work pay and prorate it out and create another theoretical day. If you're actually there and working, that's the work day. If you're paid not to work, that's a work day, too. That's a day for which you receive compensation for your employment. It is a day so employed. But I'm not sure I follow why if you choose to sell back a vacation day, that shouldn't count also. Because it would be counting the same day twice. Basically, in Woolley, what happened is the claimant there not only worked, but he received vacation day. He accumulated a lot of vacation hours. And what the employer was attempting to do was segment those vacation hours into eight-hour days and prorate them out and call them days worked, even though the claimant was actually there for those very same days. So you couldn't claim the same day twice, as all the Woolley court was saying. Well, it would have been included, as I understand it, counsel would have been included in the days worked already. Yes. Because he did work that day and, therefore, would have been included in his days worked. Right. Essentially, you're not going to double count it because he got vacation pay. The Fourth and Fifth Circuit rule is also sensical for another reason, and that is holidays are accounted for in every other aspect of the 10A calculation. Holiday pay comes in in claimant's pre-injury wages. Holidays are included in the 260-day multiplier. There's no reason for excluding them from the only other relevant calculation under Section 10A, which is the average daily wage calculation. Again, the only reason to omit them from the average daily wage calculation would be to accomplish an overpayment. And that's clearly not the purpose of 10A. The purpose of 10A is to fairly and reasonably calculate the claimant's pre-injury average weekly wage and average annual earning capacity. It's not to overcompensate or to gross up, if you will, the average weekly wage. Anything further, counsel? No, Your Honor. Thank you. Mr. Rabinowitz, you have some reserve time. I think there's just a couple of things I'd like to mention. Holiday pay is not earned on the holiday. It's earned on the other days that the employee works. Secondly, I feel, reading Matulak, and I've read it many, many times, is that this case did discuss not only when Section 10A applies, but how it applies. And I think the basic argument between Mr. Beatty and me on this issue is he feels Matulak is wrong and I feel it's right. Let me ask you another question. Is this an ambiguous statute? You could argue – well, that's an argument that could have been made in Matulak, but – and the Court said we're – I didn't ask you about Matulak. I said is this an ambiguous statute? I think – If it's an ambiguous statute, you know where I'm going. Yeah. If it's an ambiguous statute, what deference do I do – do I owe to the Benefits Review Board? You don't owe any deference to the Benefits Review Board. It's not a policymaking board. Well, I understand that. But if you're going to quote my precedent, it doesn't seem to me that I can say I don't owe any deference. Well, that's how the courts have interpreted it. I don't have the Supreme Court case right in front of me. I think it's either PEPCO or Cowart. Don't we also say in our case law that we must, however, respect the board's interpretation when such interpretation is reasonable and reflects the underlying statute? There is – there is that. There are some cases – That's McDonnell v. Director, 897 Fed Second. I mean, that's my court's law as well, correct? I think that's correct. But I think the answer to that is we have to go back to Matulak. I think Matulak did address this, made it pretty clear, and I think that should be the continuing rule of the Court.  Thank you, counsel. Thank you. The case just argued will be submitted for decision.
judges: Whyte, O'scannlain, Smith M.